FILED

2013 Sep-23  AM 11:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ALABAMA

### SOUTHERN  DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **CASE NO. 2:10-CR–154-SLB-JEO** |
| ) | |
| **CLIFTON LAMAR DODD,** ) | |
| **also known as, CLIFF DODD )** | |

### GOVERNMENT'S TRIAL MEMORANDUM

COMES now the United States of America, by and through its Counsel, Joyce White Vance, United States Attorney for the Northern District of Alabama, by and through Michael W. Whisonant, Assistant United States Attorney, and respectfully submits this Trial Memorandum of the law and issues which may be raised at trial.

## I.  INTRODUCTION

The defendant, CLIFTON LAMAR DODD was indicted by the Grand Jury April 25, 2013.  The Indictment charges one count of sending anthrax hoax letters through the U.S. Mails in violation of 18 U.S.C. § 1038(a)(1); three counts of sending a threatening communication with intent to extort money through the U.S. Mails in violation of 18 U.S.C. § 876(b); and, three counts of sending a threatening communication with threat to injure through the U.S. Mails in violation of 18 U.S.C. § 876©.

## II. **STATUTES**

### 18 U.S.C. § 2(a)

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

### 18 U.S.C. § 876(b)

Whoever, with intent to extort from any person any money or other thing of value, so deposits or causes to be delivered, as aforesaid, any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined shall be fined not more than $250,000 or imprisoned not more than twenty (20) years, or both.

### 18 U.S.C. § 876©

Whoever, knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined shall be fined not more than $250,000 or imprisoned not more than five (5) years, or both.

### 18 U.S.C. § 1038(a)(1)

Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed

and where such information indicates that an activity has taken, is taking or will take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title shall be fined under Title 18, or imprisoned not more than five years, or both.

<u>Chapter 10</u>

The predicate offense referred to the indictment is in Chapter 10- - Biological Weapons.  Specifically, Title 18, United States Code, Section 175(a).  That statute reads as follows:

(a)  Whoever knowingly develops, produces, stockpiles, transfers, acquires, retains, or possesses any biological agent, toxin, or delivery system for use as a weapon, or knowingly assists a foreign state or any organization to do so, or attempts, threatens, or conspires to do the same, shall be fined under this title or imprisoned for life or any term of years, or both.

<u>Chapter 113B</u>

The additional predicate offense referred to in the indictment is in Chapter 113B - Terrorism.  Specifically, Title 18, United States Code, Sections 2332a(a) (2)(A) and (D).  That statute reads as follows:

(a) Offense against a national of the United States or Within the United States. - A person who, without lawful authority, uses, threatens, or attempts or conspires to

3

use, a weapon of mass destruction[1] against any person or property within the United States, and

(A) the mail or any facility of interstate or foreign commerce is used in furtherance of the offense;

(D) the offense, or the results of the offense, affect interstate or foreign commerce, or in the case of a threat, attempt, or conspiracy, would have affected interstate or foreign commerce.

<u>18 U.S.C. §1038(c)(1)</u>

The Court, in imposing a sentence on a defendant who has been convicted of an offense under subsection (a), shall order the defendant to reimburse any state or local government, or private not-for-profit organization that provides fire or rescue service incurring expenses incident to any emergency or investigative response to that conduct, for those expenses.

## III.   <u>STATEMENT OF FACTS</u>

The following is a statement of the facts the government expects to be developed during the trial of this case.  It is intended for the convenience of the trial court and in no way limits or binds the government.

---

[1]The term weapon of mass destruction means any weapon involving a biological agent, toxin, or vector.  18 U.S.C. § 2332a(c)(2)(C).

**Count One**

On April 4, 2011, a letter containing a white powder substance was received in the U.S. mail at the Jefferson County Clerk's office in the Jefferson County Criminal Courthouse in Birmingham, Alabama.  Bridgette Williams, a courthouse employee opened the letter and was exposed to the unknown white powder.  Ms. Williams contacted her supervisor, Ms. Cindy Collins, who called the Jefferson County Sheriff's Department to report the incident.  The Jefferson County clerk's office was closed.  The Birmingham Fire Department Hazmat team responded to the courthouse and conducted quarantine and decontamination procedure.  They also  conducted a field test on the unknown white powder.  The field test was  negative for a hazardous substance.  The substance was subsequently transported to the Alabama Department of Public Health in Montgomery, Alabama for further testing.  The examination at the state laboratory concluded that the powder was a non-harmful substance.

The letter was addressed to "Teresa McClendon, 10 Judicial Circuit, 801 Richard Arrington Jr. Blvd, Birmingham, AL 35203".  The return address was "M.K. Fish #314137, Jefferson Co. Jail, 809 Richard Arrington Jr. Blvd, Birmingham, Al 35203".  Both the envelope and the letter were hand written. The letter seemed to indicate that it was from Michael Bole and threats of bodily harm were made to various persons who worked in the judicial system that were associated with his recent

criminal trial.  Teresa McClendon was the Assistant District Attorney on Boles' recent state case.  The letter contained threats to kill not only ADA McClendon, but also Jefferson County Circuit Judge Tommy Nail and U.S. District Court Judge Scott Coogler.

Inspector Stephen Mathews with the Postal Inspection Service, who was familiar with Bole's handwriting determined that the handwriting in the letter was not typical of Bole's handwriting.  Inspector Mathews did recognize the handwriting as bearing some characteristics of another person he had dealt with in the past, that being the defendant, CLIFTON LAMAR DODD.  One example of these characteristics is that misspelled words in the letter were misspelled the same way in other writings by DODD, for example, liar was spelled "lier".  No fingerprints of value were developed from the letter or envelope.

At the time this letter was received DODD was in the Calhoun County Jail awaiting trial in U.S. District Court on charges of mailing twenty-three (23) hoax anthrax letters.[2]  DODD was sharing a cell with Michael Bole.  Bole was later transferred to State prison.

During June 2011, Inspector Stephen Mathews contacted Lt. Lisa Abernathy

_____

[2] Dodd plead guilty to all counts on July 12, 2011.  On December 1, 2011, Dodd was sentenced to 51 months custody followed by 36 months on supervised release.

at the Calhoun County Jail regarding their procedures for handling outgoing mail and visitation.  Lt. Abernathy advised that outgoing mail is not routinely screened.  She said that the jail does not allow contact visits.  All in-person visits are conducted using a phone system and are recorded.  All telephone calls are recorded.  Each inmate has a unique phone code assigned to them where the phone system logs and records the phone calls.  Inspector Mathews began monitoring DODD's phone calls and visits.

On June 9, 2011, a conversation was recorded between inmate Shannon Jackie Williams and his brother Shawn Williams.  The phone call was made using DODD's phone code and he can be heard at the beginning of the call.  Shannon Jackie Williams told his brother about DODD's plan to have Shannon Jackie Williams  mail a package of letters to Shawn Williams so that Shawn Williams could take the letters out of the package and mail them.

On June 15, 2011, Inspector Mathews and Federal Protective Services Special Agent Brandon Scott interviewed Shannon Jackie Williams a the Calhoun County Jail.  Shannon Williams told the agents that he had mailed a package containing several letters to his brother, Shawn Williams at DODD's request.   Shannon Williams said that he told his brother not to open and mail the letters, but to hold onto the package of letters and turn them over to investigators.  Shannon Williams said that DODD was attempting to make himself so valuable to an investigation of Michael Bole, that

investigators would need DODD to testify against Bole and would drop the charges against DODD in exchange for his testimony against Bole.   Shannon Williams said he saw the letters DODD wrote and they contained threats directed at judges.

On June 15, 2011, Inspector Mathews and Agent Scott interviewed Shawn Williams at his residence.  Williams confirmed that his brother Shannon spoke with him about DODD's request that he mail letters for DODD.  Williams stated that the package of letters had not arrived yet, but would notify the Investigators when they did arrive.  Williams gave Inspector Mathews permission to take custody of the package and open it.

On June 16, 2011, Inspector Mathews recovered a package from the U.S. mails which was addressed to Shawn Williams and was from the Calhoun County Jail. Four (4) fingerprints identified as belonging to DODD were found on the package.  Upon opening the package Inspector Mathews found five (5) stamped addressed envelopes. There were:

### Count Two

An envelope addressed to "Mr Scott Cooger (sic), Hugo Black Bldg, 1729 5th Ave No., Birmingham, Al 35203."  The return address was "Grag (sic) Stevens, 752 19th No., Birmingham, Al 35203."  Both the envelope and the letter were hand written. The unsigned letter reads,

8

> "Mr. Scott Cooger we need to talk.  I was hired to kill you back in December.  When I take a job I do it.  I have been watching you and I know were you live and were you go.  If you want to die OK.  If not I want five thousand dollars in a blue bag put in the trash can at the park.  I want all the money in twentys.  Put a AD in Sundays paper, the Ad must say Pool Cleaner tow days a wee.  I will call and tell you were to bring the money.  I will call and tell you am Mr. Fish.  If I see anything that looks funny, I will kill you."

Two fingerprints identified as belonging to DODD were found on the envelope and one fingerprint identified as belonging to DODD was found on the letter.

U.S. District Judge Scott Coogler has chambers in the Hugo Black Federal Courthouse located at 1729 5th Avenue North in Birmingham, Alabama.   Judge Coogler presided over a federal criminal case involving Michael Bole.

### **Count Three**

An envelope addressed to Tommy Nail, Jefferson Co. Court, 89 21st No., Birmingham, Al 35203.  The return address was Grag (sic) Stevens, 752 19th No., Birmingham, Al 35203.  Both the envelope and the letter were hand written.  The unsigned letter read:

> "Mr. Tommy Nail, we need to talk.  I was hired to kill you back in December.  When I take a job I do it.  I have been watching you and I know were you live and were go.  If you want to die OK.  If not I want five thousand dollars in a blue bag put in the trash can at the park.  I want all the money in twentys (sic).  Put an ad in Sundays paper, the ad must say pool cleaner two days a week.  I will call and tell you were to bring the money.  I will call and tell you am Mr. Fish.  If I see anything that looks funny, I will kill you."

Six (6) fingerprints identified as belonging to DODD were found on the on the letter.

Jefferson County Circuit Judge Tommy Nail has a court room and chambers in the Jefferson County Courthouse located at 89 21st Street North in Birmingham, Alabama.   Judge Nail presided over Michael Bole's case in state court.

## Count Four

An envelope addressed to "James O'Kelly, Hugo L. Black Bldg, 1729 5th Ave No., Birmingham, Al 35203".  The return address was "Grag (sic) Stevens, 752 19th No., Birmingham, Al 35203".  Both the envelope and the letter were hand written. The letter read:

> "Mr. James O'Kelly, we need to talk.  I was hired to kill you back in December.  So when I take kare of Scott Cooger, me and you will talk. I am watching you and I know where you live.  I will write you back latter."

The letter was signed "Mr. Fish."  Two (2) fingerprints identified as belonging to DODD were found on the letter addressed to Jim O'Kelly.  Mr. O'Kelly, now deceased, was an attorney in the private practice of law.  He specialized in criminal defense work and has represented Michael Bole on an appeal in the past.

## Count Five

An envelope addressed to "Shiela (sic) Weil, Jefferson Co. Court, 809 21st No., Birmingham, Al 35203."  The return address was "Grag (sic) Stevens, 752 19th No.,

Birmingham, Al 35203."  Both the envelope and the letter were hand written.  The letter read:

> "Mrs. Sheila Weil, we need to talk.  I was hired to kill you back in December.  So when I take care of Tommy Nail, me and you will talk.  I am watching you and I know where you live.  I will write you back latter."

The letter was signed "Mr. Fish."  One (1) fingerprint identified as belonging to DODD were found on the on the envelope addressed to Sheila Weil and one (1) fingerprint identified as belonging to DODD was found on the letter in the envelope. Mrs. Weil is an attorney in the private practice of law who specializes in criminal defense work and has represented Michael Bole in the past.

## Count Six

An envelope addressed to "Michael Bole, Jefferson Co. Jail, 809 21st No., Birmingham, Al 35203."  The return address was "Grag (sic) Stevens, 752 19th No., Birmingham, Al 35203."  The envelope contained a letter and a card, all of which were hand written.  The letter read:

> "Michael this is your friend from jail.  I am going to first scare them and then kill them.  I have been watching them for six months.  I have been to Judge Tommy Nail house and talked to James O'Kelly.  I know were Judge Scott Cooger (sic) lives.  I have not tried to find anyone else.  Just be sure the money is their."

The card read:

"Michael sometimes it is us and only us.  I will kill all of the SOBs that
fucked you and me over.  Your girlfriend is hot and I am going to fuck
the shit out of her."

The card was signed "Friend."  No fingerprints of value were found on the letter or

card.

## Count Seven

On September 30, 2011, the Talladega County Sheriff's Office was contacted

by Jim Preuitt regarding a threatening letter he received.  The letter was addressed to

"Jim Prat, 723-East-Battle-St., Talladega-Al 35160".  The return address on the letter

was "Todd Jones, 1409-Second St., Talladega-Al 35160".

Both the envelope and the letter were handwritten.  The enclosed letter read:

"Jim did you forget about me.  Yes you did.  I didn't forget about you.
I want my money.  All of my money.  I am out of town now but I will be
back.  Get my money or die."

The handwriting on the letter is similar to that on the letters named in the other counts.

This letter was postmarked from Dayton, Ohio.  DODD has several family members

residing in Ohio.

## Handwriting Evidence

The handwriting on all the envelopes and letters appears to be similar.  All of

the letters and envelopes recovered in this case were sent to the U.S. Postal Inspection

Service Forensic Laboratory for a handwriting examination.  A forensic handwriting

examiner will testify that it is his opinion that the hand printed entries on the letter addressed to Jim Prueitt (Count 7) was probably written by DODD.  The examiner also concluded that the writing observed on the letters and envelopes named in Counts One through Seven were all written by the same author.

The following information was taken from a summary chart which the government will use to explain to the jury where the fingerprints were found and the handwriting analysis for each letter or envelope:

| Count | | DODD's Fingerprints | Handwriting |
|---|---|---|---|
| 1 | Envelope (McClendon) | 0 | - |
| | Letter | 0 | Same Author |
| | | | |
| 2 | Envelope (J. Coogler) | 2 | Same Author |
| | Letter | 1 | Same Author |
| | | | |
| 3 | Envelope (J. Nail) | 0 | Same Author |
| | Letter | 6 | Same Author |
| | | | |
| 4 | Envelope (O'Kelly) | 2 | - |
| | Letter | 0 | Same Author |

| Count | | DODD's Fingerprints | Handwriting |
|---|---|---|---|
| 5 | Envelope (Weil) | 1 | Same Author |
| | Letter | 1 | Same Author |
| | | | |
| 6 | Envelope (Bole) | 0 | Same Author |
| | Letter | 0 | Same Author |

13

| 7 | Envelope (Preuitt) Letter | 1 not Dodd's 0 | Dodd Probably Wrote Neither confirmed or eliminated |
|---|---|---|---|
| | Shawn Williams Package Envelope Letter | 4 0 | |

## IV.   EXPERT TESTIMONY

### Examination of Unknown White Powder

Dr. Sharon Massingale, Laboratory Director for the Alabama Department of Public Health will testify regarding her examination of the unknown white powder referred to in Count One of the Indictment.  She will also testify that based upon her examination of the white powder that the substance is not a biotoxin and was a non-hazardous substance.  A copy of Dr. Massingale's report has been disclosed to the defendant.  The defendant may wish to stipulate to this testimony.

### Fingerprint Evidence

Craig Hellman, Sr. Forensic Latent Print Analyst with the U.S. Postal Inspection Service Laboratory will testify to his examination of the latent prints found on the various envelopes and letters named in the indictment.  He will testify that based upon his comparison of the defendant's known fingerprints and the latent fingerprints found on the documents in this case, it is his opinion that the latent prints are those of the defendant.  A copy of Mr. Hellman's report has been provided to

14

defense counsel.

## Handwriting Evidence

Haley Elliott, a Forensic Document Examiner with the U.S. Postal Inspection Service Laboratory will testify about his examination of the handwriting found on the various envelopes and letters named in the indictment. He will testify that based upon his comparison of the defendant's known handwriting and the handwriting on the documents he was able to form certain opinions. He will testify that the envelope addressed to Jim Preuitt (Count Seven) was probably written by the defendant. He will also testify that the letter and envelope addressed to Jim Preuitt (Count Seven) had isolated similarities when compared to the other letters. He concluded that these similarities indicate that all the letters were written by the same writer. A copy of Mr. Elliott's report has been provided to defense counsel.

## Weapons of Mass Destruction Expert

Major Mark Smith, a Nuclear Medical Science Officer with the 46th Civil Support Team (WMD) of the Alabama Army National Guard will testify about anthrax, that it is a biological toxin, that it is considered a weapon of mass destruction, and explain to the jury how it might be used as a weapon or an instrument of terror. Major Smith will explain the minute quantity of anthrax required to infect an individual, the ways anthrax can be transmitted to humans (through the skin,

swallowed, or breathed), and how if treatment is not begun within a matter of days the mortality rate for anthrax is 97% to 100%, while with treatment that mortality rate is lower.

## V.  ANTICIPATED LEGAL ISSUES

### A.    ADMISSIBILITY OF EVIDENCE

Admissibility of evidence is a matter which lies within the discretion of the district court.  United States v. Lopez, 758 F.2d 1517, at 1521 (11th Cir. 1985).

### B.    EXPERT WITNESS

The government expects to call expert witnesses in the following areas: document/handwriting examiner (Haley Elliott); forensic chemistry (Dr. Sharon Massingale); and biological weapons, specifically anthrax (Mark Smith).  Rule 702 of the Federal Rules Of Evidence, provides that if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if

(1)    the testimony is based upon sufficient facts or data,

(2)    the testimony is the product of reliable principles and methods, and

(3)    the witness has applied the principles and methods reliably to the facts

of the case.

In order to offer an expert opinion, the proponent must not only establish that the witness is an expert in a particular field, but also that the methodology used by the witness to arrive at his conclusion qualifies under Daubert v. Merrell Dow Parms., 509 U.S. 579 (1993).  United States v. Sarras, 575 F3d 1191m 1211 (11th Cir. 2009). Rule 703 of the Fed. R. Evid. provides: "That facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."  Rule 703 is not an open door to all inadmissible evidence disguised as expert opinion, however.  Although experts are allowed to refer to hearsay evidence as a basis for their testimony, such hearsay must be of the type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject.  United States v. Scrima, 819 F2d 996 (11th Cir. 1987).

The court may wish to caution the jury that as with any other witnesses testimony, they must decide for themselfs whether to rely upon the opinion of an expert.  The Eleventh Circuit Pattern Jury Instruction Number 7, Expert Witness would be an appropriate jury instruction in this case.

## C.      404(b) EVIDENCE

On December 1, 2011 the defendant was convicted of 23 counts of violation of 18 U.S.C. § 1038(a)(1)(A), Conveying False Impression and Perpetuating a Hoax, and one count of violation of 18 U.S.C. § 371, Conspiracy to Convey False Information and Perpetuating a Hoax.  He was sentenced to 51 months custody and ordered to pay restitution in the amount of $1,945 to the City of Birmingham Fire and Rescue Department.  At the time of the present offense the defendant was in custody awaiting trial on the above convicted charges.  The facts in the earlier case are in many ways similar to those in the present case.  The defendant mailed letters to individuals with fictitious return addresses.  There was an attempt to disguise the handwriting on the envelopes and letters.  The letters contained white powder and in some instances also contained threats.

Federal Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  The rule permits the introduction of evidence of a prior or uncharged act if the government can demonstrate: (1) a proper purpose for introducing evidence; (2) that the prior act occurred and that the defendant was the

actor; and (3) that the probative value of introducing the evidence outweighs any prejudicial effect the evidence might have.  United States v. Cancelliere, 69 F.3d 1116 (11th Cir. 1995); United States v. Mills, 138 F.3d 928 (11th Cir. 1998); United States v. Kapordelis, 569 F.3d 1291, 1313-1314 (11th Cir. 2009).

While the government submits that the evidence of the defendant's prior criminal conduct is admissible in this case under Rule 404(b), as it has so many physical similarities that it is virtually a "signature" crime for the defendant, it may not be necessary to proceed under Rule 404(b).  The evidence of the defendant's prior criminal activity is inextricably intertwined with the criminal activity in this case.  The defendant was in the Calhoun County jail awaiting trial on his former case when he hatched this plan, recruited another inmate to help him carry it out, prepared the letters and caused them to be mailed.  Evidence of the defendant carried out his new mailing scheme while in custody awaiting trial for mailing hoax anthrax letters  I necessary to tell the whole story which the jury is entitled to hear.  United States v. Wright, 392 F.3d 1269 (11th Cir. 2004).

D.    TESTIMONY OF A COOPERATING WITNESS

The government expects to call two witnesses who are currently incarcerated. Although there is not written agreement between the witnesses and the government, both witnesses have been advised that should the undersigned Assistant United States

19

Attorney assess their cooperation and testimony as truthful, candid, and complete, that a motion may be filed with Court recommending that their current term of imprisonment be reduced pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

Shannon Williams is currently serving a 58 month sentence imposed in the Northern District of Alabama for a violation of 18 U.S.C. § 922(g), Convicted Felon in Possession of a Firearm.   Brian Jerome Lindsey is serving a 276 month sentence imposed in the Northern District of Alabama for a violation of 18 U.S.C. § 2113(a)&(d), Bank Robbery with Violence, along with a 84 month sentence to be served consecutively for violation of 18 U.S.C. § 924( c), Use and Carrying a Firearm in Relation to a Crime of Violence (Bank Robbery).

The court may wish to caution the jury that they should consider some witnesses' testimony with more caution than others.  The Eleventh Circuit Pattern Jury Special Instruction Number 1.1, Testimony of Accomplice, Informer, or Witness with Immunity would be an appropriate jury instruction in this case.

      E.      <u>IMPEACHMENT OF WITNESS WITH PRIOR FELONY CONVICTION</u>

Should the defendant testify at the trial of this case the government will attempt to impeach the defendant pursuant to Fed. Rules of Evid. Rule 609 based upon his

prior felony conviction in the Northern District of Alabama.  As stated above on December 1, 2001, the defendant was convicted and sentenced on 23 counts of violations of 18 U.S.C. § 1038(a)(1) and one count of violation of 18 U.S.C. § 371. The government submits that the probative value of the evidence of the defendant's prior convictions for similar conduct far outweighs the prejudicial effect to the defendant.

 F. <u>CHAIN OF CUSTODY</u>

 Any gaps in the chain of custody affect only the weight of the evidence and not its admissibility.  <u>United States v. Roberson</u>, 897 F. 2d 1092 (11th Cir. 1990).

## VI.  <u>CONCLUSION</u>

 In a trial expected to last three  to four days, the United States believes that  the evidence will establish beyond a reasonable doubt that CLIFTON LAMAR DODD is guilty of all counts charged in the indictment .

 Respectfully submitted this the 23rd day of September, 2013.

       JOYCE WHITE VANCE
       United States Attorney


       /s/
       MICHAEL W. WHISONANT
       Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing has been served on the defendant via CM/ECF, on this the 23rd day of September, 2013, to his attorney of record: Russell Stein.

/s/
MICHAEL W. WHISONANT
Assistant United States Attorney